

FILED
JAN 21 2015

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| EARL DAVID DOWTY,<br><br>    Plaintiff,<br><br>vs.<br><br>B.O.P., STATE OF SOUTH DAKOTA, and MARTY JACKLEY,<br><br>    Defendants. | 3:13-CV-03032-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS |

## I. BACKGROUND

Earl David Dowty filed a § 2254 petition challenging his state court convictions as being obtained in violation of his constitutional rights. Dowty is currently a prisoner in the custody of the Federal Bureau of Prisons. Dowty pleaded guilty to Felon in Possession of a Firearm, United States v. Dowty, CR-11-30026, Doc. 26, and was sentenced to ten years in federal custody by this Court on August 16, 2011, Dowty, CR-11-30026, Doc. 38. The firearm to which Dowty admitted possession was one of the firearms stolen in the burglaries for which he was convicted in a South Dakota state court. Dowty, CR-11-30026, Doc. 24.

The federal sentence is being served concurrently with a forty-five-year sentence imposed upon Dowty by the Circuit Court for the Sixth Judicial Circuit of South Dakota. Doc. 14-1 at 4; Doc. 14-2 at 4; Doc. 14-3 at 4. The circumstances surrounding Dowty's state court convictions were summarized by the South Dakota Supreme Court in its opinion affirming Dowty's state convictions:

During a 25-day period in October and November 2010, three homes were burglarized in rural Mellette County. The homes were located within 20 miles of each other. The first burglary occurred on October 30, 2010. Upon returning home at approximately 12:30 a.m. on October 31, 2010, Peter and Marla Ferguson realized their home had been burglarized. Several items were missing from the Ferguson home, including two televisions, two jewelry boxes, three guns, Marla's work bag, and all the meat from their freezer. The Fergusons reported the burglary to the Mellette County Sheriff's Office, which initiated an investigation.

On November 6, 2010, Jeannine Woodward and Rose West left their home around 9:00 a.m. When Woodward and West returned home at approximately 4:00 p.m., they discovered that several items were missing from the freezer and that seven guns had been stolen. Outside, Woodward and West noticed blood trailing from the driveway to the front door. However, there was no blood inside their home. During the investigation of the burglary, the Mellette County Sheriff's Department collected a sample of the blood from the front door for DNA testing. At that time, no suspects were identified for either burglary.

The next burglary occurred on November 24, 2010. At approximately 7:00 p.m., Michael Williams returned home after having dinner with his family at a co-worker's house. Williams's wife and children had a separate vehicle, and planned to return home sometime after Williams. Upon entering his home, Williams immediately saw two men he did not recognize. One of the two men was rifling through the freezer, while the other man was attempting to remove the television from the wall. The man by the freezer turned around and pointed a handgun at Williams. Subsequently, Williams saw the man by the television reach into his coat pocket. Williams then saw a laser beam flash across the wall. Williams closed the front door and started running away from the house. While Williams was running, he saw the laser beam shining near him on the ground and was then shot twice in the leg. Despite his injuries, Williams was able to access the handgun he carried with him and fire one shot in the air. Williams then called 911 on his cell phone. The two men fled the scene while Williams waited for help. Once law enforcement arrived, Williams was transported to the hospital for treatment. He eventually recovered from his injuries. Items stolen from Williams's home included the handgun with the laser sight, a second handgun, jewelry, coins, and a flashlight.

After Williams was transported to the hospital, law enforcement began investigating the burglary and shooting. Agent Jason Jares, a law enforcement officer employed by the South Dakota Division of Criminal Investigations (DCI), led the investigation. One of the items recovered from the scene was a partially smoked cigarette butt that had been found near the deck outside of the home. The cigarette butt was sent to the DCI forensic lab for DNA testing.

As the investigation progressed, Earl Dowty and his stepson, Wayne Richards, became the primary suspects in the burglary and shooting that took place at Williams's home. Specifically, Dowty was suspected of being the individual Williams observed standing at the freezer. Richards was suspected of being the individual Williams observed attempting to remove the television from

the wall, who shot Williams as Williams ran away from the house. Both Dowty and Richards lived with Dowty's wife (Richards's mother), Rose Leading Fighter, at her home in Parmelee, South Dakota, which is located within an Indian reservation. Because the home was located on reservation land, Agent Jares sought assistance with the investigation from a Federal Bureau of Investigation (FBI) agent. The FBI agent obtained a federal search warrant for Leading Fighter's home that permitted law enforcement to search for items stolen from Williams's home.

The search warrant was executed on January 8, 2011. During the execution of the search warrant, law enforcement did not locate any of the items that had been stolen from Williams's home. Nevertheless, while searching the home, law enforcement discovered a tan cloth bag with a buffalo skull imprinted on the side. The bag contained various items including documents with the name "Marla Ferguson" on them, a wallet, and a jewelry box. Leading Fighter consented to law enforcement taking possession of the bag and its contents.

Before executing the search warrant, Agent Jares was unaware of the burglaries of the Ferguson and Woodward/West homes. However, Agent Jares was informed of these two burglaries after recovering the bag containing the documents with Marla Ferguson's name. Upon learning of these unsolved burglaries, law enforcement realized that some of the items they had seen in plain view while executing the search warrant at Leading Fighter's home were consistent with items that had been stolen from the Ferguson home. Ultimately, Leading Fighter consented to law enforcement taking custody of a jewelry box and a television that had been stolen from the Ferguson home.

As investigations of the three burglaries continued, law enforcement obtained additional evidence that connected Dowty and Richards to the burglaries. For example, law enforcement discovered Dowty and Richards had traded and pawned various guns that had been stolen during the burglaries of the Ferguson, Woodward/West, and Williams homes. Specifically, on November 23, 2010, Richards pawned a rifle that had been stolen from the Woodward/West home. Dowty was with Richards at the time, but Dowty remained outside the pawn shop in a vehicle. The next day, Dowty pawned a rifle that had also been stolen from the Woodward/West home. Richards was in the pawn shop with Dowty at the time Dowty pawned the rifle. Furthermore, on two separate occasions during fall 2010, Dowty traded stolen guns to Jason Little Elk in exchange for Little Elk performing repair work on Dowty's vehicle. The first gun Dowty traded Little Elk was a rifle that had been stolen from the Ferguson home. Richards was with Dowty at the time of the trade. In fact, Richards retrieved the rifle and handed it to Little Elk. The second gun Dowty traded Little Elk was the handgun with a laser sight that had been used to shoot Williams.

In addition, samples of both Dowty's and Richards's DNA were sent to the DCI forensic lab to be compared with the blood sample collected at the Woodward/West home and the cigarette butt collected at the Williams home. DNA testing established that the blood sample collected from the front door of the Woodward/West home was a match to Dowty. DNA testing of the cigarette butt collected at the Williams home revealed the presence of DNA profiles from two

> individuals. The testing established that Richards was the major contributor and Dowty was the minor contributor to the DNA found on the cigarette butt.
>
> By joint information, Dowty and Richards were charged with 13 felonies as a result of the three burglaries. Additionally, Dowty was accused of being a habitual offender. Dowty was arraigned on September 22, 2011, and he pleaded not guilty to the charges. Meanwhile, Richards entered into a plea agreement with the State in which he pleaded guilty to two of the charges stemming from the burglary and shooting that took place at the Williams home.
>
> On January 30, 2012, Dowty filed a motion to sever charges and for relief from prejudicial joinder. Dowty sought four separate trials: one trial for each of the three burglaries and an additional trial for the charges related to the shooting of Williams. The trial court issued a memorandum decision denying Dowty's motion on May 2, 2012. The case proceeded to jury trial on September 24, 2012. Richards did not testify at trial.
>
> At the close of the State's case, Dowty moved for judgment of acquittal on all charges related to the burglaries of the Ferguson and Woodward/West homes. Dowty argued that although he was charged with aiding and abetting, the State failed to present evidence that Dowty acted with another individual in committing the burglaries at the Ferguson and Woodward/West homes. Thus, Dowty asserted he could not be convicted of aiding and abetting. The trial court denied his motion. Ultimately, Dowty was convicted on 9 of the 13 felony counts, and he subsequently admitted to being a habitual offender. The trial court sentenced Dowty to a total of 45 years in the South Dakota State Penitentiary.

State v. Dowty, 838 N.W.2d 820, 822–25 (S.D. 2013) (footnotes and internal numbering omitted). Dowty argued on appeal to the Supreme Court of South Dakota that the trial court erred in denying his motion for judgment of acquittal on all charges related to the Ferguson and Woodward/West burglaries and erred in denying his motion to sever the charges. Id. at 825. Dowty sent a letter to a South Dakota state court in which he requested appointment of an attorney "for writ of habeas corpus under rule 6, and 18 U.S.C. 3006A," Doc. 14-8, but he has not filed for state habeas or other post-conviction relief, Doc. 1 at 3.

Dowty petitioned for writ of habeas corpus pursuant to 28 U.S.C. § 2254 requesting this Court vacate the state court conviction and grant a new trial. Doc. 1. This Court screened Dowty's petition and dismissed the first two of the four grounds for relief as plainly having no merit. Doc. 10 at 2. The Attorney General for the State of South Dakota responded to the

remaining two grounds in Dowty's petition by filing a motion to dismiss, arguing Dowty failed to exhaust state court procedures. Doc. 12. Dowty, acting pro se, filed several supplemental documents putting forth various arguments, some of which are pertinent to the remaining grounds and many of which are not. Docs. 15, 17, 18, 20, 22, 23, 24, 25.

## II. ANALYSIS

### A. Dowty's Claims

Dowty's § 2254 petition has two remaining grounds. First,[1] Dowty claims that the DNA evidence and testimony of the victim and Dowty's co-defendant were insufficient to support his conviction for the burglary and attempted murder at the Williams residence. Doc. 1 at 6. Second,[2] Dowty claims that the evidence is insufficient to convict him for the burglaries at the Woodward/West and Ferguson residences. Doc. 1 at 6. Dowty's arguments in support of the remaining grounds are, in sum: (1) the state was required to prove that a principal other than Dowty participated in the Woodward/West burglaries because Dowty was charged solely as an aidor and abettor and failed to do so, and (2) Michael Williams's identification of Dowty as one of the burglars in his home was insufficient to support his conviction. Doc. 17 at 1–2.

A federal district court may entertain an application for the writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment who believes that his or her confinement is in violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Though currently in federal custody, Dowty challenges the validity of his state sentences. Dowty's confinement satisfies the "custody" requirement of § 2254 because he will remain in custody following his eventual release from federal custody. See Walker v. Wainwright, 390 U.S. 335, 337 (1968) (per curiam) (holding a prisoner may seek habeas relief

---

[1] The first remaining ground was ground three in Dowty's petition for habeas relief.
[2] The second remaining ground was ground four in Dowty's petition for habeas relief.

5

even if, though determined in his favor, the prisoner would not be subject to immediate release); cf. Jackson v. United States, 423 F.2d 1146, 1149 (8th Cir. 1970) (holding a state prisoner could challenge the validity of federal confinement that he would not serve until the completion of his state sentence). Moreover, Dowty is serving a portion of his state sentence concurrently with his federal sentence.

### B. Sufficiency of Evidence for the Williams Burglary

Dowty asserts that there was insufficient evidence to convict him for the November 24, 2010 burglary of the Williams residence in his first remaining ground for relief. Specifically, Dowty argues that the DNA evidence and the eye-witness testimony was insufficient to place him at the scene of the crime. Doc. 1 at 6. A defendant has a fundamental right to be convicted only by evidence that is sufficient to convince a reasonable fact finder of his or her guilt beyond a reasonable doubt. In re Winship, 397 U.S. 358, 368 (1970). Therefore, Dowty states a claim that, if true, may be a ground for habeas relief under § 2254.

However, Dowty has not exhausted his state procedural remedies. Section 2254 bars "granting of habeas corpus relief 'unless it appears that the applicant has exhausted the remedies available in the courts of the State.'" Gray v. Netherland, 518 U.S. 152, 161 (1996); 28 U.S.C. § 2254(b)(1). While a petitioner is not required to show that there is no possible state procedure that could grant relief, he or she must give the state court a "fair opportunity" to provide relief. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). This requirement promotes comity between state and federal courts and properly gives a state court the first opportunity to correct any constitutional violations that may have occurred in a case within its jurisdiction. Rhines v. Weber, 544 U.S. 269, 273–74 (2005). Dowty did not challenge the sufficiency of the evidence against him for the Williams burglary when he appealed his conviction to the South Dakota

6

Supreme Court, see Dowty, 838 N.W.3d 820. Nor has he made such a claim in a petition for state habeas or post-conviction relief. The state courts have not had a fair opportunity to determine whether there was constitutional error that must be corrected. Therefore, Dowty's insufficiency-of-the-evidence claim with respect to the Williams burglary has not been exhausted and must be dismissed by this Court at this time.

### C. Sufficiency of the Evidence for the Ferguson and Woodward/West Burglaries

In Dowty's final ground for relief, he claims "insufficient invalid evidence" was used to convict him of the Ferguson and Woodward/West burglaries. Doc. 1 at 6. In various filings, Dowty has characterized this evidence as "fictitious and imaginary," id., and "only circumstantial evidence of the weakest kind," Doc. 22 at 1. Dowty claims that he "was charged only as an aider and abettor," Doc. 22 at 2, and "the State presented no evidence, that a principal participated in or committed the offenses," Doc. 17 at 1. Thus, Dowty argues, the evidence supporting his convictions for those offenses was insufficient as a matter of law. Doc. 17 at 1; Doc. 22 at 2.

Only a confinement that is alleged to be a violation of the United States Constitution or federal law may be challenged through § 2254. 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam). A defendant has a fundamental right to be convicted only by evidence that is sufficient to convince a reasonable fact finder of his or her guilt beyond a reasonable doubt. Winship, 397 U.S. at 368. On a valid claim for relief based upon a violation of due process due to insufficiency of the evidence under 28 U.S.C. § 2254, a petitioner is entitled to relief only if no reasonable trier of fact could have found each of the necessary elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1976).

7

With respect to Dowty's aiding and abetting argument, he does not raise an issue of constitutional or federal law. Dowty made the same argument in his direct appeal of the convictions to the Supreme Court of South Dakota. See Dowty, 838 N.W.2d at 825–26. That court rejected Dowty's claim noting that state law had abolished the distinction between a principal and an accomplice. Id. at 826 (citing SDCL 22-3-3.1). Thus, the court reasoned, if there is no legal distinction between an accomplice and a principal, it does not matter whether he was charged as an aider and abettor or whether he was charged as a principal. Id. The arguments and decision for this claim on direct appeal turned on interpretation of state law, and Dowty had a full and fair opportunity to present his arguments on the issue. Dowty presented the same theory in his § 2254 petition. Section 2254 only allows deciding whether "'the Constitution or laws or treaties of the United States' have been violated." Closs v. Weber, 238 F.3d 1018, 1023 (8th Cir. 2001) (quoting 28 U.S.C. § 2254). Claims of error based on state law grounds for relief are not cognizable in federal habeas corpus proceedings. Id.

Dowty also raises a new theory regarding generally the sufficiency of evidence to convict. This claim has not been exhausted at the state court level. Before a federal court can grant habeas relief pursuant to § 2254, a petitioner must ordinarily give the state court a "fair opportunity" to correct an alleged constitutional error. O'Sullivan, 526 U.S. at 842; Gray, 518 U.S. at 161; 28 U.S.C. § 2254(b). To give the state court a fair opportunity to address the claim, a petitioner must present the same facts and legal theories to the state court as he does the federal court. Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). In his direct appeal, Dowty only presented the theory that he could not be convicted as a principal to a crime when he was indicted as an aidor and abettor. Doc. 14-5 at 12–19. Dowty did not argue generally that the

evidence was insufficient to support his conviction, and he did not file a state claim for post-conviction relief. Therefore, this ground for relief is barred for failure to exhaust state remedies.

## III. CONCLUSION

The remaining grounds for relief in Dowty's § 2254 petition have not been exhausted or have been decided on independent and adequate state grounds, so they may not be reviewed by this Court. Therefore, it is hereby

ORDERED that Dowty's Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to § 2254 is denied. It is further

ORDERED that judgment of dismissal without prejudice of this case hereby enters. It is finally

ORDERED that no certificate of appealability enters.

DATED this 21st day of January, 2015.

BY THE COURT:

*[signature]*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE